[Cite as *State v. Dhimal*, 2026-Ohio-3059.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2026-01-005 |
| v. | : | OPINION AND JUDGMENT ENTRY 8/10/26 |
| ACHYUT DHIMAL, | : | |
| Appellant. | : | |
|  | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2024-02-0297

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

## **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Achyut Dhimal appeals an order issued by the trial court authorizing the involuntary administration of psychiatric medication. Finding no error, we affirm.

## I. Factual and Procedural Background

{¶ 2} In March 2024, a Butler County grand jury indicted Achyut Dhimal on one count of burglary, one count of kidnapping, one count of abduction, and one count of gross sexual imposition. The charges arose from allegations that Dhimal slipped under a partially open garage door into a home in Monroe, moved a cordless drill from the garage to the spot where he left his backpack and shoes near an interior doorway, and wrestled with and groped a young woman who was asleep in the basement.

{¶ 3} At his arraignment, Dhimal filed a suggestion of incompetency and entered a plea of not guilty by reason of insanity. After a hearing in April 2024, the trial court found him incompetent to stand trial and ordered him into treatment. A review hearing in February 2025 found his competency restored, but in May 2025 the court determined that he had decompensated and was again unable to stand trial. The State then moved to have the court retain jurisdiction under R.C. 2945.39. Following a hearing in June 2025, the court granted the motion under R.C. 2945.39(A)(2) and ordered Dhimal placed at Summit Behavioral Healthcare. Dhimal appealed that order, and we affirmed. *State v. Dhimal*, 2026-Ohio-1805 (12th Dist.).

{¶ 4} While Dhimal was hospitalized, his treating psychiatrist, Dr. James Xidas, asked the court by a December 2, 2025 letter to authorize the involuntary administration of 60 medications. The court set the matter for an evidentiary hearing on December 19, 2025. Dhimal attended with appointed counsel. The court admitted Dr. Xidas's letter as a joint exhibit, and Dr. Xidas was the only witness.

{¶ 5} Dr. Xidas testified that Dhimal had been diagnosed with schizophrenia and that, after his placement at Summit, Dhimal had been taking his medication and was generally calm. In the weeks before the hearing, however, Dhimal's paranoia and agitation increased. He became violent and threatening, throwing or attempting to flip

furniture, threatening to kill Dr. Xidas and other staff, at times requiring the presence of police, making inappropriate sexual comments, and claiming that he was God. According to Dr. Xidas, Dhimal would not meaningfully discuss his treatment and could not give informed consent to it, the requested medications were the least intrusive means of treating him, and their benefits outweighed their risks. Dr. Xidas explained that the medications were needed both to treat Dhimal's illness and to keep him from harming himself or others. Dr. Xidas said that he did not intend to administer all 60 medications he listed. He included all the medications that might be appropriate so that if a change was necessary, it could be implemented without the delay of seeking court authorization. Dr. Xidas also stated the medications on the list would be administered progressively, with those medications presenting the least risks being administered before medications with greater risks.

{¶ 6} On December 22, 2025, the trial court issued an order authorizing involuntary administration of medication. Relying on *Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d 176, 2000-Ohio-47, the court found by clear and convincing evidence that Dhimal lacked the capacity to give or withhold informed consent to treatment, that the medication was in his best interest, and that no less intrusive treatment would be as effective. It authorized Summit to administer 59 of the 60 requested medications (prohibiting one), gradually and as necessary, to treat Dhimal's illness and the behaviors creating a risk of harm to himself and others.

{¶ 7} Dhimal appealed.

## II. Analysis

{¶ 8} The forcible injection of mind-altering drugs into a nonconsenting person's body "represents a substantial interference with that person's liberty." *Washington v. Harper*, 494 U.S. 210, 229 (1990). And the Ohio Supreme Court has described the right

- 3 -

to refuse medical treatment as "a fundamental right in our country, where personal security, bodily integrity, and autonomy are cherished liberties." *Steele*, 90 Ohio St.3d at 180. Because the stakes are high, the Ohio Supreme Court has held that an order authorizing the forced medication of a defendant is final and immediately appealable. *State v. Muncie*, 91 Ohio St.3d 440, 2001-Ohio-93, paragraph two of the syllabus. Dhimal's appeal is properly before us, and we address his two assignments of error in turn.

### A. The Requirement to Appoint an Independent Psychiatrist

{¶ 9} The first assignment of error alleges:

> THE TRIAL COURT DEPRIVED DHIMAL OF HIS DUE PROCESS PROTECTIONS AND FAILED TO COMPLY WITH THE OHIO SUPREME COURT'S DIRECTIVES WHEN IT FAILED TO APPOINT AN INDEPENDENT PSYCHIATRIST TO EVALUATE HIM, REVIEW THE PROPOSED MEDICATION PLAN, AND FILE A REPORT.

{¶ 10} Dhimal contends in the first assignment of error that the trial court deprived him of procedural due process and departed from the directives of the Ohio Supreme Court in *Steele*, when it ordered him forcibly medicated without first appointing an independent psychiatrist to examine him, evaluate the proposed medication plan, and report to the court.

### 1. Standard of Review

{¶ 11} A trial court's decision to grant a request to change the conditions of a committed person's confinement, including a request to administer medication by force, is ordinarily reviewed for an abuse of discretion. *State v. Jung*, 132 Ohio App.3d 369, 372 (6th Dist. 1999), citing *State v. Johnson*, 32 Ohio St.3d 109, 112-113 (1987). Dhimal, however, does not challenge the trial court's exercise of discretion or the sufficiency of the evidence supporting its findings. He raises a purely legal question, namely, whether

- 4 -

the court was obligated to appoint an independent psychiatrist before ruling on Summit Behavioral's request. Questions of law, including questions of procedural due process, are reviewed de novo.

{¶ 12} We note at the outset a problem of preservation. Dhimal was present at the December 19, 2025 hearing with appointed counsel. He received notice, cross-examined Dr. Xidas, and had every opportunity to be heard. At no point did he request an independent expert evaluation, object to the absence of one, or otherwise alert the trial court to the argument he now makes. He has therefore forfeited all but plain error. Dhimal implicitly concedes as much, for his argument is that the trial court was required to appoint an independent psychiatrist sua sponte. As explained below, that argument fails under any standard of review, so we need not decide how demanding the plain-error inquiry would be in a proceeding that, though arising in a criminal case, is civil in nature. *See State v. Williams*, 2010-Ohio-2453, syllabus; *Dhimal*, 2026-Ohio-1805, at ¶ 41, fn. 7 (12th Dist.).

### 2. The Governing Substantive Framework

{¶ 13} Because the trial court retained jurisdiction over Dhimal under R.C. 2945.39 after finding him incompetent and unrestorable, this is not a case in which medication is sought to restore a defendant's competency to stand trial. Instead, the request here was made to treat Dhimal's mental illness and to address behavior endangering himself and others. That is the territory of *Steele*, which holds that a court may authorize hospital employees to administer antipsychotic drugs over the wishes of an involuntarily committed mentally ill person if it finds, by clear and convincing evidence, that "(1) the patient does not have the capacity to give or withhold informed consent regarding his/her treatment, (2) it is in the patient's best interest to take the medication, *i.e.*, the benefits of the medication outweigh the side effects, and (3) no less intrusive treatment will be as

effective in treating the mental illness." *Steele*, 90 Ohio St.3d at paragraph six of the syllabus. The trial court expressly made all three findings, and Dhimal does not contest them. His sole complaint is procedural. He contends that *Steele* also required the trial court, on its own initiative, to appoint an independent psychiatrist to examine him, evaluate Dr. Xidas's proposed treatment, and report to the court.

### 3. *Steele* Supplies the Governing Procedural Framework

{¶ 14} A state's parens patriae power "allows it to care for citizens who are unable to take care of themselves." *Id.* at 185, citing *Addington v. Texas*, 441 U.S. 418, 426 (1979). Because the trial court invoked this power, making the three findings prescribed by paragraph six of the *Steele* syllabus, the procedural discussion in Part V of *Steele* is relevant to this case. That discussion distinguishes the police-power route, under which "a trained physician determines the relevant facts," from the parens patriae route, under which the forced-medication determination "is a uniquely judicial function." *Id.* at 189. It is for that judicial function that the Supreme Court described the procedures Dhimal invokes: appointed counsel if the patient is unrepresented, notice of all hearings, the opportunity to be present, to present evidence, and to cross-examine witnesses, and the appointment of an independent psychiatrist or a licensed clinical psychologist and a licensed physician "to examine the patient, to evaluate the recommended treatment, and to report such findings and conclusions to the court." *Id.* at 189-190.

{¶ 15} The State urges us to disregard that discussion as dicta because it was not carried into the syllabus. Under the reporting rules in effect when *Steele* was decided in 2000, the syllabus stated the law. *See Williamson Heater Co. v. Radich*, 128 Ohio St. 124 (1934), paragraph one of the syllabus. And the current rule treating the entire opinion as authoritative, Rep.Op.R. 2.2, cannot be applied retrospectively. *See LGR Realty, Inc. v. Frank & London Ins. Agency*, 2018-Ohio-334, ¶ 18. The discussion also addressed an

issue the *Steele* court acknowledged was "not raise[d]" by the parties. *Steele* at 189. But we agree that "[a] healthy regard should be maintained for considered *dicta*" of the Supreme Court, and that a court disregarding such guidance "would be treading on dangerous and unstable ground." (Emphasis sic.) *State v. Boggs*, 89 Ohio App.3d 206, 213 (4th Dist. 1993). We need not determine how much weight to give the discussion, because Dhimal's argument fails even if we assume that Part V of *Steele* governs a parens patriae medication proceeding involving a person committed under R.C. 2945.39.

{¶ 16} The key question is what Part V requires. In *Steele* itself, the independent psychiatrist entered the case by operation of the civil-commitment statute, R.C. 5122.14, at the commitment stage, and later testified at the forced-medication hearing. *Steele*, 90 Ohio St.3d at 178-179. After describing the requisite procedures, the court reviewed the record and concluded that "the procedures followed by the probate court were sufficient." *Id*. at 190. It rejected brightline rules, observing that each forced-medication case is unique, that it would "not set specific guidelines" beyond periodic review, and that a court "may implement additional procedures to protect the patient's rights as the court sees fit." *Id*.

{¶ 17} Part V, in short, describes the elements of a constitutionally adequate process. It does not establish a checklist whose omission renders an order void without regard to whether the protection was ever sought, and it nowhere addresses the situation presented here, in which a represented patient, with notice and full participation through counsel, never requests the evaluation. Procedural due process rights secure an opportunity, and a party who has the opportunity to exercise procedural rights but declines to do so has not been denied due process. *See State v. Brotherton*, 2024-Ohio-5045, ¶ 19-20 (12th Dist.). Were the rule otherwise, any patient could remain silent, await the outcome, and claim automatic reversal. We recognize the concern that a person adjudged

to lack capacity to make treatment decisions cannot personally waive a safeguard designed to check his treating physician. But *Steele* answers that concern with the mandatory provision of counsel, whose decisions are subject to review, as Dhimal's second assignment of error illustrates.

{¶ 18} The case law confirms this understanding. In *Jung*, 132 Ohio App.3d at 371 (6th Dist.), the trial court "granted appellant's request for an independent psychiatric evaluation at the state's expense" and withheld its decision until the report arrived. In *State v. Rowe*, 2006-Ohio-1883, ¶ 39-40 (3d Dist.), the defendant "filed a motion to have a licensed expert appointed," the trial court denied it, and the appellate court reversed because the defendant "was improperly denied access to an independent expert evaluation." *Rowe* establishes that a court may not refuse a committed person's request for an independent evaluation before ordering forced medication. No Ohio court has held that an order is invalid because the trial court failed to require an evaluation that no one sought. Dhimal was not denied access to anything.

### 4. The Statutory Scheme Points the Same Way

{¶ 19} The structure of R.C. 2945.401 reinforces our reading of *Steele*. R.C. 2945.401(B) states that a commitment under R.C. 2945.39 (incompetent to stand trial) or 2945.40 (not guilty by reason of insanity) may not be changed "except by order of the trial court." R.C. 2945.401(B). And courts have held that a facility's request for authority to medicate a committed person by force is a recommended change in the conditions of commitment. *Jung* at 372; *Rowe* at ¶ 36. At any hearing held under division (C) or (D)(1) or (2) of R.C. 2945.401, the person has "all the rights of a defendant or person at a commitment hearing as described in section 2945.40 of the Revised Code," R.C. 2945.401(F), which includes "[t]he right to have independent expert evaluation and to have that independent expert evaluation provided at public expense if the person is

indigent," R.C. 2945.40(C)(2). Because R.C. 2945.401 governs persons committed under R.C. 2945.39 and R.C. 2945.40 in identical terms, *Rowe* is not distinguishable on the ground that it involved a person found not guilty by reason of insanity.

{¶ 20}There is a textual wrinkle. R.C. 2945.401(D)(1) contemplates a recommendation by "the designee of the department of mental health and addiction services or the managing officer of the institution or director of the facility or program," made "after evaluating the risks to public safety and the welfare of the defendant or person," and the request here was conveyed by Dr. Xidas, a staff psychiatrist. But the request was captioned, litigated, and decided as Summit Behavioral Healthcare's request, presented through the letter admitted as a joint exhibit, and nothing in the statute requires that the facility's recommendation issue over the managing officer's personal signature rather than through the treating physician who authored it. Nothing in the record suggests Dr. Xidas acted without institutional authority. The statutory phrase "at any time after evaluating the risks to public safety and the welfare of the defendant" describes the deliberation that precedes and permits a recommendation, not a pleading requirement, and Dr. Xidas's testimony recounting Dhimal's escalating dangerousness and deteriorating condition documents such an evaluation. In any event, even if the December 19 hearing fell outside R.C. 2945.401(D)(1), the consequence would not help Dhimal. His procedural rights would then rest on due process alone, that is, on *Steele*, and would fail for the reasons already given. The trial court's authority to act would remain under R.C. 2945.401(B) and *Steele* itself. *See Rowe* at ¶ 42 (stating that the Revised Code confers no special forced-medication powers in this setting; *Steele* supplies the governing standards).

{¶ 21}Where the General Assembly wanted independent review to occur automatically, it said so: a recommendation for nonsecured status or termination of

commitment triggers a mandatory evaluation by the local forensic center without any request by anyone. R.C. 2945.401(D)(1)(b). For other hearings, including this one, the legislature conferred an independent-evaluation right that the court must announce and the person may exercise, listing it in R.C. 2945.40(C) alongside the rights to subpoena witnesses, present evidence, and testify or decline to testify—rights that are the person's to invoke. Having expressly displaced the probate procedures of R.C. Chapters 5122 and 5123 for hearings under R.C. Chapter 2945, R.C. 2945.401(B), the legislature chose the inform-and-invoke model over the automatic-appointment model for forced-medication requests. We note that if the hearing was one to which R.C. 2945.40(C) applied, the trial court was required to inform Dhimal of the enumerated rights, and the record before us does not disclose whether it did so. Dhimal has not assigned or argued any failure to inform, and we will not construct the argument for him. *See Dhimal*, 2026-Ohio-1805, at ¶ 56 (12th Dist.).

### 5. No Plain Error

{¶ 22} Because Dhimal never requested an independent evaluation or objected to its absence, he must demonstrate plain error. He cannot. The trial court did not accept Dr. Xidas's request uncritically. It heard his testimony, permitted cross-examination, made each of the three *Steele* findings, refused authorization for one of the 60 requested medications, ordered that the remaining medications be administered gradually and only as necessary, and set the matter for further hearing on January 5, 2026, just two weeks after its order was entered. That prompt review comports with *Steele*'s admonition that all such orders "should be periodically reviewed" and supported by competent medical evidence. *Steele*, 90 Ohio St.3d at 190. And Dhimal remains free to invoke his right to an independent expert evaluation at that hearing or at any later one. On this record, the absence of an unrequested evaluation resulted in no miscarriage of justice.

{¶ 23} The first assignment of error is overruled.

**B. Ineffective Assistance of Counsel**

{¶ 24} The second assignment of error alleges:

> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR THE APPOINTMENT OF AN INDEPENDENT PSYCHIATRIST TO EVALUATE DHIMAL AFTER THE TRIAL COURT FAILED TO DO SO SUA SPONTE.

{¶ 25} Dhimal argues in the alternative that if the trial court had no sua sponte duty to appoint an independent psychiatrist, then his counsel was ineffective for failing to request one. A commitment proceeding under R.C. 2945.39 is civil in nature. *Williams*, 2010-Ohio-2453, at paragraph two of the syllabus. Accordingly, Dhimal's right to counsel at the December 19 hearing was statutory rather than constitutional. *See* R.C. 2945.401(F); R.C. 2945.40(C)(1). We assume, without deciding, that the familiar two-part standard of *Strickland v. Washington*, 466 U.S. 668 (1984), applies in this situation, since Dhimal's claim fails even on that assumption.

{¶ 26} To prevail, Dhimal must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Strickland* at 687-688; *State v. Hensgen*, 2017-Ohio-8793, ¶ 27 (12th Dist.). Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment, and the failure to make an adequate showing on either prong is fatal to the claim. *Hensgen* at ¶ 27. To establish prejudice, Dhimal must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id*. at ¶ 28.

{¶ 27} Dhimal's argument runs into problems on both the first prong and the second. As to performance, the failure to file a motion is not per se ineffective assistance. *State v. Schlosser*, 2011-Ohio-4183, ¶ 34 (3d Dist.). Counsel here was not idle. He

appeared, participated, and subjected Dr. Xidas to cross-examination that helped persuade the trial court to strike one medication from the requested list. And counsel could reasonably have calculated that an independent evaluation carried real risk. In *Jung*, the court-appointed independent psychiatrist examined the patient and agreed with the treating physician's diagnosis and recommendation for antipsychotic treatment. *Jung*, 132 Ohio App.3d at 371 (6th Dist.). Given the record of Dhimal's escalating behavior, which included threats to kill Dr. Xidas, throwing furniture, attempts to follow staff off the unit, and an inability to sustain any conversation about his own care, counsel might sensibly have concluded that a second psychiatric voice was more likely to corroborate Dr. Xidas than to contradict him. Decisions of that kind fall comfortably within the wide range of reasonable professional judgment.

{¶ 28} Prejudice presents an even bigger problem, and Dhimal makes no serious attempt to establish it. He establishes, at most, that a motion for appointment probably would have been granted, and on that point we agree. Given R.C. 2945.40(C)(2) and *Rowe*, a trial court presented with such a motion would have been hard pressed to deny it. But the granting of the motion is not "the result of the proceeding" for *Strickland* purposes. The result of the proceeding was the forced-medication order, and Dhimal must show a reasonable probability that an independent evaluation would have changed it. Nothing in the record suggests what an independent psychiatrist would have concluded about Dhimal's capacity to give informed consent, the appropriateness of the proposed medications, or the availability of less intrusive alternatives. The uncontroverted evidence before the trial court pointed in one direction. Dhimal had been diagnosed with schizophrenia; had decompensated markedly over several weeks; could not discuss his treatment without yelling, threatening, or demanding discharge; and had engaged in repeated episodes of violence. A claim of prejudice built on speculation about what an

expert might have said cannot undermine confidence in the outcome. *See Schlosser* at ¶ 36 (rejecting an ineffective-assistance claim supported by "nothing other than conjecture"). And because the trial court's order remains subject to prompt and periodic review, at which Dhimal may invoke his statutory right to an independent evaluation, any residual concern about the one-sidedness of the medical evidence has a ready remedy that does not require vacating the order now in place.

{¶ 29} Having failed to demonstrate either deficient performance or prejudice, Dhimal has not established ineffective assistance of counsel. The second assignment of error is overruled.

### III. Conclusion

{¶ 30} We have overruled both assignments of error. The trial court applied the correct substantive standard, made each necessary finding, tailored its order, and scheduled prompt further review. Dhimal possessed, but did not exercise, a statutory right to an independent expert evaluation, and his counsel's decision not to invoke that right was neither unreasonable nor shown to be prejudicial. The trial court's judgment is affirmed.

PIPER, P.J., and SIEBERT, J., concur.

- 14 -

_____

**J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robin N. Piper, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*